UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

Eastern District of Kentucky
**FILED**

OCT 2 2 2013

AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

JOEL STEVEN SPIGELMAN,  )
                                         )
      Plaintiff,    )    Civil Action No. 13-CV-074-GFVT
                                         )
v.                                      )
                                         )    **MEMORANDUM OPINION**
CHARLES E. SAMUELS, JR., *et al.*,  )    **AND ORDER**
                                         )
      Defendants.  )

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

## I

Joel Steven Spigelman is an inmate confined in the United States Penitentiary in Coleman, Florida. Proceeding without an attorney, Spigelman has filed a civil rights complaint [R. 1] asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") § 3 *et seq.*, 42 U.S.C.A. § 2000cc–1, *et seq.* Spigelman filed a prior action in this district asserting the same claims against the same defendants. *See Joel Steven Spigelman v. Charles E. Samuels, Jr., et al.*, No. 6:12-cv-104-GFVT (E.D. Ky. 2012) (hereafter "*Spigelman I*"). *Spigelman I* was dismissed without prejudice because Spigelman had failed to exhaust his administrative remedies. [*Id.*, at R. 17]. In that dismissal, the Court advised Spigelman that he could file a new *Bivens* action once he had

exhausted his administrative remedies.[1] By prior order, the Court waived the payment of any filing fee. [R. 2].

The Court must conduct a preliminary review of Spigelman's complaint in the present action (hereafter "*Spigelman II*") because (1) Spigelman was granted pauper status in *Spigelman I* and was permitted to pay the filing fee in installments, (2) the filing fee in the present case has been waived, and (3) he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Spigelman's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). For the reasons explained below, the Defendants will be required to respond to Spigelman's complaint.

## II

Prior to his transfer to USP-Coleman, Spigelman was confined in USP-McCreary, located in Pine Knot, Kentucky. Spigelman, who describes himself as "an observant Jewish male," alleges that while he was confined in USP-McCreary's segregated housing unit ("SHU") between November 9, 2011, and January 12, 2012, the Defendants violated his First Amendment

---

[1] Further, since Spigelman had been granted permission to pay the filing fee in installments in *Spigelman I*, the Court advised Spigelman that the filing fee in his new *Bivens* case would be waived if he asserted the same claims therein as he did in *Spigelman I*. [ R. 17 at 5].

2

right to observe his religious beliefs and his rights guaranteed under the RLUIPA, by denying him permission to wear certain religious articles collectively known as a "tefillin," which observant Jews wear during weekday morning prayers. [R. 1 at 9]. A tefillin consists of a set of small black leather boxes containing scrolls of parchment inscribed with verses from the Torah. The hand-tefillin, or shel yad, is placed on the upper arm, and the strap wrapped around the arm, hand, and fingers, while the head-tefillin, or shel rosh, is placed above the forehead. Spigelman asserts that wearing a tefillin is a "cornerstone" of Jewish faith, and that the defendants violated the Bureau of Prisons' ("BOP") policy which permits Jewish prisoners to wear a tefillin.

Spigelman states that he submitted an informal grievance concerning his religious claim, but that the prison staff did not respond to it; then he submitted a formal grievance complaining about the issue, but he received no response. [R. 1 at 4-5.] He did not appeal to either the BOP's Regional nor Central Offices because he "did not receive any response nor copy of my grievance." [*Id.* at § III(A)(3)(b) (as to the BOP's Regional Office) and (4)(b) (as to the BOP's Central Office)]. Spigelman seeks $360,000 in compensatory damages and unspecified punitive damages.

It is apparent from the face of his complaint that Spigelman did not exhaust his administrative remedies regarding his First Amendment and RLUIPA claims. Spigelman acknowledges that he did not exhaust his administrative remedies prior to filing the complaint; however, he also claims that he attempted to exhaust his administrative remedies, but that prison officials thwarted his efforts to do so. Specifically, Spigelman states that he filed numerous cop-outs with USP-McCreary's staff regarding his lack of access to the tefillin with the following prison staff and that he personally talked to the following staff about this matter when they were making the rounds in the SHU: Warden Richard B. Ives, Associate Warden H. Quay, Captain B.

3

Antonelli, Supervisory Chaplain J. G. Hallock, Chaplain D. Basile, Counselor Partin, and SHU Lt. Cheney. [R. 1-11 at 1.. Spigelman states that "nobody would answer the cop-outs." [*Id.*] Spigelman also claims that he gave a BP8 Form to Counselor Partin, which Partin accepted but failed to respond to and would not provide Spigelman with a copy thereof. Spigelman further states that he filed a valid BP9 at USP-McCreary, but that "Counselor Partin refused to make Spigelman a copy of BP9; refused to answer BP9; refused to see Spigelman during his time in the SHU." [R. 1-5 at 4.] Subsequently, Spigelman was transferred to USP-Coleman I. After the transfer, Spigelman states: "At USP Coleman I, the Counselor refused to address Spigelman's request for BP10 or BP11. Without these forms, Spigelman could not continue with administrative remedies." [R. 1-5 at 5.]

Spigelman concedes that he abandoned the exhaustion process at both the second and third levels because he allegedly received no response to his request for a formal remedy (BP-9) from the Warden of USP-McCreary, and that after he was transferred to USP-Coleman I, his Counselor refused to provide him with the BP-10 and/or BP-11 forms necessary to continue and complete the exhaustion process.

Federal law requires state and federal prisoners to exhaust all available administrative remedies before filing suit to challenge any aspect of their prison conditions. 42 U.S.C. § 1997e(a). Federal prisoners must follow the BOP's four-tiered administrative remedy process set forth at 28 C.F.R. §§ 542.10-542.19. The BOP regulation which governs responses to inmate grievances states that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. Thus, if the Warden does not respond to an inmate's BP9 within the allotted time, the inmate is free to file an appeal to the BOP's Regional Office. However, if

4

the inmate is unable to obtain the BP10 form from prison officials, he cannot file an appeal, thus crippling his ability to pursue and exhaust his administrative remedies.

If prison officials prevent an inmate from exhausting administrative remedies by ignoring properly filed grievances or by impeding the use of the grievance system through actions such as withholding necessary forms, destroying inmate submissions, and the like, those remedies are not "available" to the prisoner and he has not forfeited his ability to file suit. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir.2008); *Kaba v. Stepp*, 458 F.3d 678, 684-85 (7th Cir.2006); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir.2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir.2002).

Spigelman states that after his cop-outs went unanswered, he filed a BP8 form with Counselor Partin, but that Partin did not respond to it and failed to provide him with a copy of it. [R. 1-5 at 4; R. 1-11 at 1-2, 6.] He further states that he filed a BP9 with the Warden at USP-McCreary, that Warden Ives responded to the BP9 but refused to provide him with a copy of it and that Warden Holland failed to provide him with a BP10 form to appeal to BOP's Regional Office. [R. 1-11 at 11.] Moreover, after his transfer to FCI-Coleman I, Spigelman claims that prison officials there would not respond to his request for BP10 or BP11 forms. Thus, assuming the truthfulness of Spigelman's assertions, he was unable to exhaust his administrative remedies solely because prison officials would not provide him with the forms necessary to accomplish that task.

When a prisoner follows proper procedures and prison officials are responsible for mishandling his grievance, it cannot be said that the prisoner has failed to exhaust his remedies. *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir.2006). To reiterate, at this stage, the Court must accept Spigelman's version of the events as true, *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009), and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*,

*supra.* At this stage, based on Spigelman's allegations, the Court must presume that he attempted to exhaust his administrative remedies and that prison officials essentially prevented him from doing so by failing to provide him with the necessary forms.

Thus, to the extent that exhaustion of administrative remedies is at issue in this case, it should be decided on a more fully developed record. *See Jones v. Bock, supra.* Consequently, the court will direct the issuance of summons to the named Defendants to respond to Spigelman's First Amendment and RLUIPA claims.

Accordingly, **IT IS ORDERED** that:

1. The Clerk of the Court shall prepare the documents necessary for service of process upon the named defendants, *in their individual capacities*:

       a. Charles E. Samuels, Jr., Director Bureau of Prisons;
       b. Richard B. Ives, Warden, USP-McCreary;
       c. H. Quay, Associate Warden, Programs, USP-McCreary;
       d. J. G. Hallock, Supervisory Chaplain, USP-McCreary; and,
       e. D. Basile, Chaplain, USP-McCreary.

2. The Clerk of the Court shall prepare a "Service Packet" consisting of the following documents for service of process upon the Defendants:

       a. a completed summons form;
       b. the complaint and attachments thereto [R. 1];
       c. this Order; and
       d. a completed USM Form 285.

3. The Deputy Clerk shall provide the Service Packets and copies to the United States Marshal ("USM") in Lexington, Kentucky.

4. Service of Process upon Defendants Richard B. Ives, Warden; H. Quay, Associate Warden, Programs; J. G. Hallock, Supervisory Chaplain; and, D. Basile, Chaplain, all prison staff at USP-McCreary, shall be conducted by the United States Marshals by serving a Service

Packet *personally* upon each of them, through arrangement with the Federal Bureau of Prisons. The USM Office is responsible for ensuring that each defendant is successfully served with process. In the event that an attempt at service upon a defendant is unsuccessful, the USM Office shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

5. Service of Process upon Defendant Charles E. Samuels, Jr., Director, Federal Bureau of Prisons, shall be made by *certified or registered mail, return receipt requested*, to Charles E. Samuels, Jr., Director, Federal Bureau of Prisons, at the BOP's Central Office in Washington, D.C.

6. The USM Office must complete service on the named Defendants by serving the Service Packets described in above paragraph 2 *by certified or registered mail* to:

    a. one set of the copies to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

    b. one set to the Office of the Attorney General of the United States in Washington, D.C.; and

    c. one set to the Office of the Federal Bureau of Prisons in Washington, D.C.

7. Spigelman must advise the Clerk's Office of any change in his current mailing address. Failure to do so may result in dismissal of this case.

8. Spigelman must communicate with the Court solely through notices or motions filed with the Clerk's Office.

9. For every further pleading or other document he wishes to submit to the Court, Spigelman shall serve upon the Defendants, or, if appearance has been entered by counsel, upon Defendants' attorney, a copy of the pleading or other document. Spigelman shall send the

original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to the defendants or counsel.

10. The Court will disregard any document which has not been filed with the Clerk of the Court; which has been filed but fails to include the certificate of service of copies; or which has been sent directly to the Judge's chambers.

This 21st day of October, 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge