UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOEL STEVEN SPIGELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-CV-074-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHARLES E. SAMUELS, JR., *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

Joel Steven Spigelman is an inmate confined in the United States Penitentiary in Coleman, Florida.  Proceeding *pro se*, Spigelman filed a civil rights complaint [R. 1] asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") § 3, *et seq.*, 42 U.S.C.A. § 2000cc–1, *et seq.*, alleging that while he was confined in the United States Penitentiary-McCreary ("USP-McCreary") located in Pine Knot, Kentucky, the Defendants[1] violated his First Amendment rights and his rights under the RLUIPA relative to the practice of his religious beliefs during the period of time he was housed in the Special Housing Unit ("SHU").  Spigelman seeks compensatory damages of $360,000.00. [R. 1 at 11].

---

[1] The named Defendants are Charles E. Samuels, Jr., Director Bureau of Prisons; Richard B. Ives, Warden, USP-McCreary; H. Quay, Associate Warden, Programs, USP-McCreary; J. G. Hallock, Supervisory Chaplain, USP-McCreary; and, D. Basile, Chaplain, USP-McCreary.

This matter is before the Court on the Defendants' motion to dismiss or, in the alternative, for summary judgment. [R. 40] Spigelman having filed a response to the Defendants' dispositive motion [R. 42], and Defendants having filed a reply thereto [R. 44], this matter is ripe for review.  For the reasons explained below, Defendants' motion to dismiss, or alternatively, for summary judgment will be granted.

I

Spigelman arrived at USP-McCreary on December 21, 2010, and remained designated there until January 12, 2012, when he was transferred to the Federal Transfer Center in Oklahoma City, Oklahoma. [R. 40-2, Decl. of Sonny Partin,[2] ¶ 4; Attachment B thereto, at 1]. For a portion of that time, from November 9, 2011 until January 12, 2012, Spigelman was placed in USP-McCreary's SHU. [*Id.*; Attachment C: SENTRY Report, Inmate History Quarters at 1]. Spigelman, who describes himself as "an observant Jewish male," claims that while he was confined in USP-McCreary's SHU, the Defendants violated his First Amendment right to observe his religious beliefs and his rights guaranteed under the RLUIPA, by denying him permission to wear certain religious articles collectively known as a "tefillin," a Jewish prayer item.[3] [R. 1 at 9].

On December 1, 2011, Chaplain Basile prepared a memorandum to Warden Richard Ives addressing the use of tefillin by inmates in the SHU.  [R. 40-3, Decl. of Daniel Basile, ¶ 3; Attachment A, Memorandum dated December 1, 2011].  Chaplain Basile prepared the memorandum as a means of allowing Jewish inmates housed in the SHU, like Spigelman, to use

---

[2] Sonny Partin is not a named defendant in this case.

[3] In Jewish religion practice, tefillin are also known as the phylacteries. Phylacteries are two small, black, leather cubes containing a piece of parchment inscribed with verses 4–9 of Deut. 6, 13–21 of Deut. 11, and 1–16 of Ex. 13.  One is attached with straps to the left arm and the other to the forehead during weekday morning prayers by Orthodox and Conservative Jewish men.  *Phylactery*, DICTIONARY.COM, http://dictionary.reference.com/browse/phylacteries?s=t (last visited Mar. 25, 2015).

tefillin in a safe manner that did not threaten the safety and well-being of staff or other inmates. *Id.* Per Chaplin Basile, tefillin can present a significant safety and security risk, as tefillin have long leather straps which could potentially be used as a weapon to harm inmates or staff members. [R. 40-3, Basile Decl. ¶ 4]; *see also Gutman v. Wrigglesworth*, 1:09-CV-628, 2012 WL 7060704 (W.D. Mich. Oct. 9, 2012) (rabbi was required to maintain and transport tefillin into jail, and supervise use of such, as tefillin could be used as a weapon and as a possible method for prisoner to harm himself). Chaplin Basile's memorandum acknowledged the possible conflict between the safety issues created by tefillin and an inmate's religious beliefs. *Id.* Accordingly, Chaplain Basile recommended that inmates who desired to use tefillin be allowed to do so during the inmate's recreation period, when the inmate would be under the direct supervision of the recreation officer. [R. 40-3, Basile Decl. ¶ 5]. Under this plan, the inmate would be required to submit a written request to staff to use tefillin. *Id.* The staff would retrieve tefillin from the inmate's property, and at the conclusion of the inmate's prayers, tefillin would be returned to the officer's station. *Id.*

This memorandum was circulated through Chaplain Basile's chain of command. [R. 40-3, Basile Decl. ¶ 6]. Supervisory Chaplain John Hallock, as the supervisor of the Religious Services Department, reviewed the memorandum and signed it. Next, the memorandum was reviewed and signed by Associate Warden Herman Quay, who had administrative oversight of the Religious Services Department. *Id.* Finally, the memorandum was signed by Warden Richard Ives. *Id.* The memorandum, signed by Ives, Quay, Hallock and Basile, put a mechanism in place that would permit Spigelman, and other inmates of the Jewish faith, the use tefillin while housed in SHU.

As detailed in the Memorandum Opinion and Order entered on October 22, 2013 [R. 9], it is apparent from the face of his complaint that Spigelman did not exhaust his administrative remedies regarding his First Amendment and RLUIPA claims.  Spigelman acknowledges that he did not exhaust his administrative remedies prior to filing the complaint; however, he states that he attempted to but that prison officials thwarted his efforts to do so.  If prison officials prevent an inmate from exhausting administrative remedies by ignoring properly filed grievances or by impeding the use of the grievance system through actions such as withholding necessary forms, destroying inmate submissions, and the like, those remedies are not "available" to the prisoner, and he has not forfeited his ability to file suit.  *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Kaba v. Stepp*, 458 F.3d 678, 684-85 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Strong v. David*, 297 F.3d 646, 649-50 (7th Cir. 2002).

In responding to Spigelman's claims, the Defendants contend that, contrary to Spigelman's claims, prison officials did not thwart his efforts to exhaust his administrative remedies.  In support of their motion to dismiss, the Defendants rely on the Declarations of prison personnel and the BOP's prison records that are summarized below.

Spigelman was assigned to Correctional Counselor Sonny Partin's case load from November 2011 through January 2012.  [R. 40-2, Partin Decl. ¶ 6].  During this time period, Counselor Partin made weekly rounds in the SHU.  *Id.*  When making his rounds in the SHU, Counselor Partin would check with inmates on his case load to see if they had any issues that needed the Unit Team's attention.  *Id.*  Additionally, Counselor Partin always took blank administrative remedy forms (Informal Grievance Forms known as BP-8s; BP-9s; BP-10s; and BP-11s) with him when he made his SHU rounds to ensure that inmates on his caseload had access to the Administrative Remedy Program.  *Id.*

4

USP-McCreary maintains a logbook that Unit Team members sign when they enter and leave the SHU.  [R. 40-2, Partin Decl. ¶ 7].  A review of the SHU Log Book for the relevant time period reflects that Counselor Partin made weekly rounds in the SHU on the following dates and times:

| DATE | TIME |
|---|---|
| November 23, 2011 | 9:16 a.m. to 10:30 a.m. |
| November 24, 2011 | 8:15 a.m. to 8:30 a.m. |
| December 1, 2011 | 8:20 a.m. to 10:50 a.m. |
| December 8, 2011 | 7:30 a.m. to 9:48 a.m. |
| December 16, 2011 | 8:30 a.m. to 11:10 a.m. |
| December 22, 2011 | 8:00 a.m. to 11:00 a.m. |
| December 29, 2011 | 7:45 a.m. to 10:00 a.m. |
| January 5, 2012 | 12:30 p.m. to 1:45 p.m. |

[R. 40-3, Partin Decl.; Attachment E: Copies of Special Housing Unit Visitors Log for Nov. 6, 2011 to Jan. 7, 2012].

In addition to Counselor Partin, other members of the Unit Team also made weekly rounds in the SHU.  *Id.*  Like Counselor Partin, all members of the Unit Team carry remedy forms with them during their rounds.  *Id.*  Thus, Spigelman would have had access to the remedy forms from any member of the Unit Team.  *Id.*

According to the BOP's records, in direct contradiction of Spigelman's allegations that BOP staff prevented him from exhausting his administrative remedies by not permitting him access to the appropriate forms, Spigelman filed two formal administrative remedies during his time in SHU from November 9, 2011, to January 12, 2012.  [R. 40-3, Partin Decl. ¶ 5;

Attachment D: SENTRY Report, Administrative Remedy Generalized Retrieval at 32-35].

Neither of these filings related to the claims alleged in the instant case.  Additionally, Spigelman

also filed multiple administrative remedies in the months following his transfer from USP-

McCreary to USP-Coleman I in Florida, including a Request for Administrative Remedy that

was filed on January 12, 2012, upon his arrival at the Federal Transfer Center in Oklahoma City,

Oklahoma.  *Id.*  In addition to the formal administrative remedies filed under the Administrative

Remedy Program, Spigelman also filed several informal grievances and cop-outs.  *Id.*  These

records clearly demonstrate that Spigelman did have access to the Administrative Remedy

Program forms and yet, he did not file an administrative remedy that relates to the claim he has

raised in the present litigation.

First, on December 1, 2011, Spigelman filed an informal grievance claiming that he was

not receiving adequate medical care in the SHU.  [R. 40-3, Partin Decl. ¶ 9; Attachment F:

Grievance dated Dec. 1, 2011].  Next, on December 22, 2011, Spigelman filed an informal

resolution with Counselor Partin.  [R. 40-3, Partin Decl. ¶ 9; Attachment G: Grievance dated

Dec. 22, 2011].  In this request for informal resolution, Spigelman indicated that he had

requested the use of tefillin in SHU, but he had been denied access to use it.  *Id.*  Counselor

Partin had copies of the original grievances provided to him as he sent electronic copies of the

grievances to the relevant department for that department's response (e.g., claims involving

religious issues were sent to the Religious Services Department; medical issues were sent to the

Medical Department).  *Id.*  When Counselor Partin received a response from the involved

department, he completed the response portion on the original informal resolution form and then

returned the original form with his response to the inmate.  *Id.*  As per policy, Counselor Partin

did not make or retain copies of the informal grievances after the response portion was completed and provided to the inmate.[4]  *Id.*

On November 17, 2011, Spigelman filed an Appeal ("BP-11") with the BOP'S Office of General Counsel (Remedy Identification Number 640957-A1).  [R. 40-3, Partin Decl. ¶ 10; Attachment D at 32].  This appeal concerned a medical issue and was closed on February 28, 2012.  *Id.*

On December 21, 2011, Spigelman filed a Request for Administrative Remedy ("BP-9") at USP-McCreary (Remedy Identification Number 670289-F1).  [R. 40-3, Partin Decl. ¶ 11.] Spigelman alludes to the filing of this BP-9 in his Complaint.  [R. 1, Complaint, Page ID# 67 (stating that he "[f]iled a BP9 with the warden after medical responded to BP8")].  This appeal involved the same medical issues Spigelman raised in his December 1, 2011 informal grievance. *Id.*  Spigelman was provided a response for informational purposes only on January 5, 2012.  *Id.*

Finally, on January 12, 2012, Spigelman filed a BP-11 with the BOP's Office of General Counsel wherein he appealed a prior Request for Administrative Remedy.  *Id.*  This remedy was assigned Remedy Identification Number 640961-A1, but was rejected because it was filed late.  *Id.*  The issue involved in the appeal was also of a medical nature only.  *Id.*

II

A

To reiterate, Spigelman acknowledges that he failed to exhaust his administrative remedies[5] regarding the use of tefillin while in the SHU, but he contends that prison officials

---

[4] Pursuant to Program Statement 1330.18, Administrative Remedy Program, and the prior versions of the Program Statement, informal grievances or resolutions are not part of the Administrative Remedy File maintained by the Warden, Regional Director or Office of General Counsel.  Policy, therefore, does not require that staff maintain copies of the informal grievances part of the Administrative Remedy Program.

[5] The BOP's four-tiered administrative remedy scheme, available to inmates who have a complaint about their confinement, is set out in Administrative Remedy Program Statement Number 1330.16 and 28 C.F.R. §§

thwarted his efforts to do so; therefore, he should be permitted to pursue his claims against the Defendants in this action.  However, his claim that he lacked access to the proper forms and was hampered by prison officials in pursuing and exhausting his administrative remedies concerning his use of tefillin in the SHU is contradicted by both the record itself and by Spigelman's own complaint.

As recounted above, Spigelman filed informal and formal administrative grievances while in the SHU during the time in question at USP-McCreary, as well as after his transfer to FCI-Coleman I.  [R. 40-3, Partin Decl. ¶ 5; Attachment D; Attachment F; Attachment G]. Spigelman has simply failed to properly exhaust his administrative remedies regarding his claims against the defendants in the present action.  As such, his Complaint should be dismissed.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to make exhaustion of administrative remedies mandatory for prisoners. The statute provides as follows:

No action shall be brought with respect to prison conditions under 1983 of this

---

542.10-542.19.  An inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy. 28 C.F.R. § 542.13(a). The informal request to staff is colloquially known as a BP-8 or BP-81/2.  By attempting to informally resolve the issue, the inmate provides staff with an opportunity to correct the problem before filing a request for an administrative remedy.  If the inmate cannot informally resolve his complaint, then he may initiate the formal remedy process by filing a formal written request on the appropriate Administrative Remedy Request form (BP-9) to the Warden.  28 C.F.R. § 542.14.  If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director for the geographical region in which the inmate's place of confinement is located.  The appeal must be submitted on the appropriate Regional Administrative Remedy Appeal form (BP-10).  28 C.F.R. § 542.15. If the inmate is not satisfied with the Regional Director's response, he may appeal to the Office of General Counsel (hereinafter "OGC") of the BOP, on the appropriate Central Office Administrative Remedy Appeal form (BP-11). Appeal to the General Counsel is the final administrative appeal in the BOP's Administrative Remedy procedures. 28 C.F.R. § 542.15.

If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days.  If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of an extension in writing. 28 C.F.R. § 542.18.

title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Therefore, a prisoner-plaintiff must first have exhausted "such administrative remedies as are available" prior to bringing a prison conditions action in a District Court. 42 U.S.C. § 1997e(a). Based on this provision, regardless of the relief offered through the administrative procedures, prisoners are required to exhaust all administrative remedies prior to filing a lawsuit regarding prison life. *Booth v. Churner*, 532 U.S. 731, 741 (2001). This requirement applies to "all inmates about prison life, whether they involve general circumstance or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Moreover, the Supreme Court has held that the PLRA requires proper exhaustion of the administrative remedy process, as "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court stressed that the benefits of exhaustion "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id*. at 95.

It is clear that in this case, Spigelman failed to fully and properly exhaust his grievances pursuant to the proper administrative exhaustion procedures vis-a-vis the use of tefillin in the SHU "in accordance with all of the provisions thereof." *Jackson v. Walker*, No. 6:07-230-DCR, 2008 WL 559693, *9 (E.D. Ky. Feb. 27, 2008). "In *Ngo*, the Supreme Court made it clear that 42 U.S.C. § 1997e(a) requires available administrative procedures to be completed properly, not in a self-designated hodgepodge of procedures taken from various parts of the regulations." *Id.*

"'Proper exhaustion' means that the plaintiff complied with the administrative 'agency's deadline and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.'" *Morton v. Daviess Cnty. Detention Ctr.*, 4:08-CV-P30-M, 2009 WL 960495 at *2, (W.D. Ky. April 7, 2009) (citing *Ngo*, 548 U.S. at 90).

Further, the record in this matter clearly contradicts Spigelman's claims that his attempts at exhausting his administrative remedies were frustrated by BOP staff. The record establishes that Counselor Partin and other members of Spigelman's Unit Team made weekly rounds in the SHU. [R. 40-3, Partin Decl. ¶¶ 7-8; Attachment E]. During these rounds, the Unit Team members carried blank administrative remedy forms with them that they would provide to inmates upon request. *Id.*

Next, Spigelman's claim that he did not have access to the required forms or that staff members were not filing his forms is clearly contradicted by Spigelman's Administrative Remedy Records. Specifically, Spigelman filed multiple informal grievances during his time in the SHU. He filed an informal grievance concerning his medical care and one concerning the use of tefillin in the SHU. [R. 40-3, Partin Decl. ¶ 9; Attachment F; Attachment G]. Spigelman also sought administrative remedies on other issues during the relevant time period. For instance, Spigelman filed an appeal with the BOP's Central Office on November 17, 2011 (ID# 640957-A1). [R. 40-3, Partin Decl. ¶ 10; Attachment D at 32]. He also filed a BP-9 at the local level on December 21, 2011 (ID# 670289-F1). [R. 40-3, Partin Decl. ¶ 11]. Spigelman also filed an Appeal (BP-11) with the BOP's Office of General Counsel on January 12, 2012 (ID# 640961-A1). [R. 40-3, Partin Decl. ¶ 12; Attachment D at 33]. Further, upon his arrival at USP-Coleman I, Spigelman filed a BP-10 on February 27, a BP-11 on February 29 (ID# 640961-A2),

and a BP-9 on April 17 (ID# 684778-F1).  [R. 40-3, Partin Decl., Attachment D at pp. 33-34.]  If Spigelman's allegation that staff refused to provide him with appropriate forms were true, then he could not have successfully filed administrative remedy requests regarding the use of tefillin in the SHU.

However, the BOP's records conclusively establish that Spigelman had the ability to pursue his administrative remedies, and did in fact pursue remedies during his time in the SHU at USP-McCreary and in the months after his transfer to a new facility.  Since these records directly contradict Spigelman's allegations, the only "proof" Spigelman can offer is his own unsupported and self-serving allegations, which are insufficient for the purposes of defeating a motion for summary judgment and are internally contradicted by Spigelman's own complaint. *See Garvey v. Montgomery*, 128 F. App'x 453, 462 n.6 (6th Cir. 2005) (internal citations and quotation marks omitted) ("This court has noted that a motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or non-existence of any factual issues."); *Wolfe v. Village of Brice, Ohio*, 37 F. Supp. 2d 1021, 1026 (S.D. Ohio 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)) ("[S]elf-serving affidavits, alone, are not enough to create an issue of fact sufficient to survive summary judgment.").

It is clear that Spigelman has failed to exhaust his administrative remedies as required by the PLRA.  Spigelman's administrative remedy records plainly indicate that he had ample opportunity to use the BOP's Administrative Remedy Program to grieve the alleged denial of tefillin.  Spigelman's *only* administrative filing relating to the use of tefillin was an informal grievance he filed with Counselor Partin on December 22, 2011.  [R. 40-3, Partin Decl. ¶ 9;

Attachment G].  Thereafter, Spigelman did not file a BP-9, BP-10 or BP-11 seeking an administrative remedy relative to the alleged denial of his use of tefillin in the SHU at USP-McCreary during the time he was confined in the SHU therein.  Furthermore, Spigelman's allegations that he was denied access to the proper forms to file such remedies are not only contradicted by the BOP's records, but also by his own Complaint.

Accordingly, Defendants' motion to dismiss has merit.  "Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement." *Graves v. Davis*, 2:10-CV-210-MHT, 2012 WL 3639044, *3 (M.D. Ala. July 26, 2012) (citing *Booth*, 532 U.S. at 741); *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo,* 548 U.S. at 93.

B

In addition to the foregoing fatal flaw in this case noted above, *viz.*, Spigelman's failure to prove that prison officials essentially prevented him from exhausting his administrative remedies concerning the use of tefillin in the SHU, Spigelman's various claims each fail for additional reasons.  Spigelman's claims are merely bare, conclusory allegations; they fail to state how the defendants personally acted to deprive him of his Constitutional rights; and they fail to state a First Amendment claim against the defendants herein.  Consequently, none of the allegations in the Complaint state a constitutional claim.

1

While a complaint need not contain detailed factual allegations, the plaintiff's allegations must be "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  It is well settled in the Sixth

Circuit that bare, conclusory allegations of unconstitutional conduct are insufficient to state a claim for relief. *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983); *Hicks v. Dewalt*, No. 07-CV-335-KSF, 2008 WL 2859031, *4 (E.D. Ky. July 24, 2008). Moreover, the Court must determine whether a complaint states a plausible, not merely possible, claim for relief. *Iqbal*, 556 U.S. at 678. That is, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility or entitlement to relief." (internal quotations omitted). *Id.* Accordingly, overly broad and conclusory allegations are simply insufficient. *Id.*

In the present case, a review of Spigelman's complaint indicates that he has failed to push his claims of First Amendment violations "across the lines from conceivable to plausible." *Twombly*, 550 U.S. at 570. Although Spigelman claims that the Defendants somehow deprived him of access to tefillin, he fails to articulate any specific, objective facts to support this claim other than his assertion that four of these Defendants authored and/or signed a Memorandum actually designed to assist Spigelman in obtaining access to tefillin while in SHU. [R. 1, Compl.]. Such perfunctory conclusions fail to comply with the specificity requirements of Rule 8 of the Federal Rules of Civil Procedure. *Iqbal*, 556 U.S. at 683.

2

It is clear that liability for violation of a person's civil rights cannot be imposed on any defendant absent that defendant's personal actions; a plaintiff must describe how each defendant acted, personally, to deprive the plaintiff of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004); *Kesterson v. Federal Bureau of Prisons*, 60 F. App'x 591, 592 (6th Cir. 2003). Bare conclusory allegations

that a defendant personally deprived a plaintiff of constitutional or statutory rights are insufficient to state a claim.  *Hall*, 704 F.2d 246.

In the present case, Spigelman has failed to sufficiently allege specific conduct on the part of each defendant to form the basis of liability under *Bivens*.  Spigelman alleges that for the two months he was in the SHU, he was denied access to tefillin.  [R. 1, Compl. at Page ID# 9].  However, he does not allege that any of the named Defendants personally denied him the use of tefillin.  [*Id.*]  As indicated herein, the most specific conduct Spigelman ascribes to the Defendants relates to the December 1, 2011 Memorandum.  [*Id.* at Page ID# 9].  Spigelman states that Chaplain Basile authored the memorandum and that Defendant Ives, Quay and Hallock all signed the memorandum.  *Id.*  A review of this Memorandum certainly indicates that the Defendants had created a mechanism by which an inmate could have access to tefillin in the SHU.  [R. 1, Compl. at Page ID# 50; R. 40-3, Basile Decl., Attachment A].  Despite the length of his Complaint, Spigelman does not indicate that any of the Defendants personally refused to provide him with tefillin.  [R. 1, Compl.].

Under the law of the Sixth Circuit, a plaintiff must "allege that the particular defendants performed the acts that resulted in deprivation of [plaintiff's] constitutional rights. This is a requirement in *Bivens* actions such as this one."  *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (citing *Kesterson v. Moritsugu*, 149 F.3d 1183, 1998 WL 321008, *4 (6th Cir. 1998) (unpublished and table decision)).  In short, Spigelman has failed to "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Marcilis*, 693 F.3d at 598 (citing *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).  Failure to establish that any of the Defendants personally denied him the use of tefillin is fatal to his Complaint against them.

3

To the extent Spigelman has named Director Samuels, Warden Ives, Associate Warden Quay or Supervisory Chaplain Hallock, based on their supervisory capacities, his claims against these defendants must be dismissed. It is well-settled that *respondeat superior* cannot form the basis of liability in a *Bivens* action. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003). Supervisor liability must be premised on either direct or personal involvement of the named defendant. *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869 (6th Cir. 1982); *see also Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) (municipality cannot be held liable under § 1983 on *respondeat superior* theory). The Sixth Circuit has confirmed that to establish any supervisory liability, a plaintiff must allege more than a mere right to control employees and more than negligence. A plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct. *Hays*, 704 F.2d 246; *see also Carrie v. Rios*, 2008 WL 320329, *2 (E.D. Ky. 2008) (supervisor must "have at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct"). As recounted above, Spigelman failed to articulate how these Defendants, during the relevant period, encouraged or directly participated in any alleged misconduct. It appears that Spigelman filed this Complaint against Director Samuels, Warden Ives, Associate Warden Quay, and Supervisory Chaplain Hallock based solely upon their supervisory positions within the BOP or USP-McCreary. In fact, as to Defendant Samuels, Spigelman's only claim against him is that as "director of FBOP, [he] has ultimate responsibility for all FBOP employees under him." [R. 1, Compl. at Page ID#10]. Clearly, Spigelman has not asserted any direct or personal involvement by Samuels or any of the other named Defendants. As such, supervisory liability does not attach. *Combs v.*

*Wilkinson*, 315 F.3d 548, 560 (6th Cir. 2002).  Furthermore, there is a dearth of evidence that these Defendants somehow knew of substantial violations, but took no actions under their control.  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Consequently, Spigelman's *Bivens* claims against Director Samuels, Warden Ives, Associate Warden Quay, and Supervisory Chaplain Hallock must be dismissed.

4

Even presuming (a) proper exhaustion and (b) that Spigelman had established personal involvement on the part of the named Defendants, Spigelman still cannot establish a substantive violation of the First Amendment herein.  Spigelman claims that the Defendants violated his Free Exercise Clause rights as guaranteed under the First Amendment of the Constitution.  [R. 1, Compl. at Page ID# 11].  However, "[i]t is well-settled that prisoners' rights under the Free Exercise Clause may be subject to reasonable restrictions."  *Weinberger v. Grimes*, No. 07-6461, 2009 WL 331632, *4 (6th Cir. Feb. 10, 2009) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 352 (1987); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995)). Thus, Spigelman's First Amendment rights "were not violated if the challenged policies were reasonably related to legitimate penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005)).

As previously explained above, the use of tefillin, particularly in the SHU, presents uniquely challenging safety and security risks.  [R. 40-3, Basile Decl. ¶ 4].  Rather than interfering with his exercise of religion, the prison officials at USP-McCreary named as Defendants herein actually worked in concert to offer a plan for use of tefillin in the SHU.  [R. 40-3, Basile Decl. ¶¶ 3-4; Attachment A].  The Sixth Circuit has held that inmates are not entitled to the "best possible means of exercising their religio[n]." *A'la v. Cobb*, 208 F.3d 212

(6th Cir. 2000) (table).  In fact, persuasive authority from other districts indicates that given the nature of tefillin, prison officials have a legitimate penological interest in maintaining the safety and security of the institution which permits officials to place reasonable restrictions on an inmate's access to tefillin in the segregation housing units.  *See Searles v. Bruce*, No. 01-3379-JTM, 2003 WL 23573643 (D. Kan. Oct. 20, 2003) (dismissing the portion of the plaintiff's complaint where plaintiff claimed he was denied access to tefillin in segregation because the state prison had a legitimate penological interest in denying inmate access); *Subil v. Sheriff of Proter Cnty.*, 2:04-CV-0257 PS., 2008 WL 4690988, *4 (N.D. Ind. Oct. 22, 2008) ("[i]n light of the deference owed to prison officials in [matters of prison administration] . . . the defendant has shown that any burden placed on [the plaintiff's] right to use tefillin is justified by its legitimate interests in prison safety, and that no less restrictive means of doing so were available."); *Gutman v. Wrigglesworth*, 2012 WL 7060704 (W.D. Mich. Oct. 9, 2012) (prison only permitting use of tefillin in rabbi's presence was a reasonable constitutional compromise).

In the present action, Spigelman has come forward with no evidence that these Defendants personally denied his use of tefillin; instead, he submitted documentation supporting their assistance in accommodating Spigelman's use of tefillin while in the SHU. [R. 1, Compl.]. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 555 U.S. at 678.

## C

RLUIPA provides that "[n]o government shall impose a substantial burden of the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person," first "furthers a compelling government interest," and second "is

the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §

2000cc-1(a)(1)-(2). The Act defines "a government" as state and local governments, their

agencies and officials that are acting under color of state law. 42 U.S.C. § 2000cc-5(4). Based

on this language, federal courts have held that RLUIPA does not apply to the federal government

or federal authorities. *Pineda-Morales v. DeRosa*, No. 03-4297 (JBS), 2005 WL 1607276, *4

(D.N.J. July 6, 2005); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008).

Therefore, Spigelman has failed to state a claim under RLUIPA as the plain language of

the Act and the relevant case law hold that the Act applies only to state governments and actors.

Consequently, Spigelman's claims against these Defendants brought under the RLUIPA must

also be dismissed because he has failed to state a claim against them under RLUIPA on which

relief can be granted.

## D

In *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), the Supreme Court held that federal

officials are entitled to qualified immunity from suit for violations of constitutional rights insofar

as their conduct does not violate clearly established law. As long as there is a "legitimate

question" about the constitutionality of particular conduct, "it cannot be said that . . . such

conduct violates clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The

scope of the right complained of "must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640

(1987). This standard ensures that government officials are on notice of the legality of their

conduct before they are subjected to a lawsuit. *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

The Sixth Circuit has analyzed claims of qualified immunity in three steps: first, the

court determines whether a constitutional violation occurred; second, the court determines

whether the right that was violated was a clearly established right of which a reasonable person

would have known; and third, the court must decide whether the evidence offered by the plaintiff

is sufficient to demonstrate that the official's conduct was objectively unreasonable in light of

the clearly established right.  *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999);

*Shamaeizadeh v.Cunigan*, 338 F.3d 535 (6th Cir. 2003); *see also Pearson v. Callahan*, 555 U.S.

223 (2009) (holding that procedure sequence set forth in *Saucier* was often appropriate, but not

mandatory).

 In the present case, for the reasons set forth herein, Spigelman has failed to establish a

claim that the Defendants violated his First Amendment rights in respect to the exercise of his

religion.  Consequently, his claims fail to survive even the first step of the analysis, resulting in

Defendants Samuels, Ives, Quay, Hallock and Basile herein being entitled to qualified immunity.

*Saucier*, 533 U.S. at 201; *Pearson*, 555 U.S. 223; *see also Goudlock v. Hernandez*, No. 08-CV-

204-BEN(RBB), 2009 WL 2982825 (S.D. Cal. Aug. 4, 2009).

E

 The Defendants moved to dismiss, pursuant to Fed. R. Civ. P. 12(b), or alternatively, for

summary judgment.  Fed. R. Civ. P. 12(b) provides for the dismissal of claims and parties for

seven listed reasons.  Thereafter, Rule 12 continues, in subsection (d), as follows:

> **(d)**   **Result of Presenting Matters Outside the Pleadings.**  If, on a
> motion under Rule 12(b) or 12(c), matters outside the pleadings are
> presented to and not excluded by the court, the motion must be
> treated as one for summary judgment under Rule 56.  All parties
> shall be given reasonable opportunity to present all material made
> pertinent to the motion.

*Id.*  Thus, the plain language of Rule 12(d) permits a 12(b) motion to be converted to a motion

for summary judgment.  As the moving defendants herein have submitted the Declaration of

Sonny Partin, with numerous exhibits appended thereto [R. 40-2], and the Declaration of Daniel

19

Basile, including an attached exhibit [R. 40-3], all of which the Court has considered in evaluating the Defendants' motion [R. 40], summary judgment standards are applicable.

To grant a motion for summary judgment, a court must find there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the initial burden of specifying the basis upon which he contends judgment should be granted, and of identifying the portion of the record which, in his opinion, demonstrates the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the district court must make reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Since the Defendants have provided documents outside the scope of the initial pleadings in this complaint, summary judgment should be granted in their favor, pursuant to Federal Rule of Civil Procedure 56, which provides in pertinent part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In ruling on a motion for summary judgment, the Supreme Court's decision in *Celotex v. Catrett*, *supra*, is instructive. The Court rejected a standard which required moving parties to support their motions for summary judgment with an affirmative evidentiary showing which tended to negate the essential elements of a plaintiff's case. *Celotex*, 477 U.S. at 324. Instead, the Court held that "[t]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving party has made this showing, the burden passes to the nonmoving party to go beyond the pleadings and designate specific facts showing that there is a

genuine issue for trial.  *Id.*; *see also Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986).

To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.  As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

477 U.S. 242, 249-50 (1986) (internal citations omitted); *see also Matsushita*, 475 U.S. at 586-87.  The evidence presented by the nonmovant must be more than the nonmovant's own pleadings and affidavits in order to survive summary judgment.  *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990).  In his Complaint, Spigelman has failed to provide evidence that would support any claims for constitutional violations against any named Defendant herein or that would support any claim for relief under RLUIPA.  Further, in responding to the Defendants' dispositive motion, Spigelman simply regurgitated the claims made in his Complaint and came forward with no evidence to sufficiently rebut the Defendants' motion.

The matters outside the pleadings, the Declaration of Sonny Partin, and attachments thereto, and the Declaration of Daniel Basile, and attachment thereto, verify that Spigelman failed to exhaust his administrative remedies regarding the use of tefillin in the SHU, that the Defendants did not thwart Spigelman's efforts to exhaust his administrative remedies concerning the use of tefillin in the SHU, that the Defendants did not abridge Spigelman's First Amendment rights, that he has no viable claim against them under RLUIPA, and that even if he had established a First Amendment violation, the Defendants are entitled to qualified immunity from

suit.  Thus, there is no material fact surrounding Spigelman's claims, and as a matter of law, the Defendants are entitled to summary judgment.

III

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1)      Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b), or alternatively Motion for Summary Judgment [R. 40] is **GRANTED**;

(2)      Plaintiff Joel Spigelman's Complaint [R. 1] is **DISMISSED**;

(3)      All pending motions are **DENIED as moot**;

(4)      The Court will enter an appropriate judgment.

(5)      This matter is **STRICKEN** from the active docket.

This the 26th day of March, 2015.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**